Good morning to all. We are here on the final day of our sitting this week, and as always, Judge Luck and I are so thankful to Judge Wendy Berger, who is a district judge for the Middle District of Florida. She is sitting by designation with us, and we certainly appreciate her being willing to do so. So we're going to be hearing three cases today, the first of which is Zunz Insurance Company v. United States of America Internal Revenue Service et al., 22-12336. Ms. Leach, you may proceed to the podium and start when you are ready, and I see that you have reserved four minutes for rebuttal. Yes, Your Honor. Name. It's tough with that pronunciation, being a lawyer. May it please the Court. I'm Amy Leach of Ackerman, LLP, and I have the honor and privilege of representing the appellant, Zunz Insurance Company, before the Court today. Your Honors, the lower court should be reversed for two reasons. First, the debtor's commercial tort claim from the BP oil spill was settled, released, extinguished, and replaced by the settlement agreement entered into with the BP parties. That was finalized no later than 2014. So when Zunz and the debtor security agreement in 2015, the debtor did not have a commercial tort to pledge. Do you agree that if we, let's say we find that it was a commercial tort claim until December of 2017 at the least, that you could not prevail, if we would agree with that proposition, right? Your Honor, we would concede the point. Correct. That after, correct, in 2017, after when the IRS lien was perfected against third parties. So in my mind, the most important question for us is when, and you agree that at least at the start, it was a commercial tort claim? Yes, Your Honors. We also do not, we do not disagree with that. So for us, we just have to pick the point in between some point in 2012, when the claim was filed, to, or 2010, to sometime in 2017, in between of when this thing ripened into something else. Because at some point it did ripen into something else. Intangible property, existing contract, whatever, right? Yes, Your Honor. So we would be looking at the time period before March 2017. Okay. When the liens were perfected, when the IRS liens were perfected against third parties. I want to focus into that. It seems to me that you guys agree on the test, and I think you sort of referred to that, but I just want to be clear that we're all on the same page together. And that test seems to be the one from Common 15 to section, Florida Statute section 679.1091 of the UCC, which states that once a claim arises in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort. We agree that's the test, right? Your Honor, excuse me. I wouldn't go so far as saying it's a test, but it is certainly a guideline. Collateral can change descriptions. It can through the scope of time. Lustig and In re Chorney, cited as both ways, does point to that comment. And it points out a commercial tort claim does not remain a commercial tort claim forever. We agree. But what I want to do is to understand when legally we would decide one becomes So we all agree it started that way. We all agree at some point it became something else. I want to understand the test there. So Common 15 seems to be a place that everyone focused on agreed to. I know the Florida courts give some deference to the commentary, although it's not dispositive. And clearly, that requires a settlement. And it also requires, and I think you agree in your briefs, an obligation or contractual obligation to pay, right? Yes, Your Honor. And again, I wouldn't – I would not – well, Your Honor, I would not describe that as a dispositive test. Okay. I would describe it that's one way a commercial tort can convert. Instead, I would point the Court's focus instead to Florida's UCC, what to describe. What describes collateral? What is collateral? It is anything that describes collateral that is reasonably identified. It can be described by category or by type. I know, counsel, but here's the issue. If we agree that this started out as a commercial tort claim, and we also agree that unlike the test that you're describing in the Florida UCC, commercial tort claims are required to be described with specificity, and we all agree that your lien did not do that – so we all agree to those three things – then the key for us is determining at what point this became something other than that had to be described with specificity. So that's why I'm trying to understand what legally – how we get there. And I agree it got there at some point. Your position is, I think, that this happened at some point in 2012 because this thing settled. Your client was part of a class. The class settled. And as part of that settlement, they were entitled to payment, right? They had a right to payment. And, Your Honor, I would go even a little further than that. They submitted the claim form. They submitted all their paperwork for it to determine, to apply to the calculation that was set forth in the settlement agreement. Your Honor, back to your original question, though. There is no test, and I think that's why we're here. There's no bright-line test. But I will say we satisfied that comment. So it is not a commercial tort claim. And, again, looking back to just the original definitions of the UCC, Florida's UCC describes a commercial tort claim as arising out of a – I want to talk about the right to payment part of it, because that seems to be the real trigger here. Everyone agrees there was a settlement. There was something that was settled. Well, Your Honor, I think the lower courts ignore the fact that it's a settlement agreement. But let's dig down a little bit on the settlement agreement, because I'm wrestling right now with the – you're saying, okay, we have the settlement agreement. It's approved by the MDL court in 2014. At that point, did this settlement agreement give you a right to payment? It gave – I certainly see that it gave you a right to go into the payment process, but it seems rather indefinite. Can you tell me why the mere finalization of the settlement agreement itself, which starts off the claims process, is enough? Because the settlement agreement released all claims arising from, resulting from, or due to the Deepwater Horizon incident. So if the debtor was going to try to go and sue BP in another court for a commercial tort claim, he would not be allowed to. It would not be allowed to because it already released that commercial tort claim by the explicit terms of the settlement agreement. That's not really what happened, as I understand it. So this is a class, and it had economic damages. And the way a class works is there's a choice. You could choose to stay in the class and get whatever process is done there. Sometimes it's a coupon you get. Sometimes it's five bucks. Sometimes it's, you know, a huge settlement for a few people. Or you can opt out and bring your own claim. And so your client chose to go through door number one, and I think what Judge Branch is asking, and I have the same exact question, which is, door number one seemed to me to be an option to possibly get a payment down the line as opposed to a guarantee that you were going to get money at the end of the rainbow. But, Your Honor, if I may, that distinction really is without difference here because we submitted the claim form and we submitted all paperwork to apply that formula. There is no dispute. But the problem seems to be, and I want to go through some specific language with you. So Section 422 of the agreement, for example, states, quote, the court has directed the transition coordinator to evaluate claims currently pending with the GCC, which was your, this applies to your client. He had one pending at the time. And any new claims submitted before the settlement program agreed to by the parties is opened and, where appropriate, under the existing rules, methodologies, and protocols to pay the amount set forth. That's a lot of ifs, ands, and buts. Before, if appropriate, where it's there, after an evaluation, then it says to pay. How is that a contractual obligation to pay, like, for instance, in Gemini, where there was a structured settlement that required payments every single month? In Reed-Chorney and Gemini are very similar to our case. They've got the contract language, all contract rights. How is that, how can you say it's similar? I mean, a structured payment is, I have an $800,000 settlement. You're going to give me $300,000 immediately over the course of five months or ten months or whatever. Or you're going to pay it, you know, in this many installments over time with some interest. That's an obligation to pay. This seems to be a lot more contingent, is it not? Your Honor, we respectfully disagree. SUNS has performed every action on its side to receive payment. It submitted the paperwork for the formula to be applied. Your Honors, if my settlement agreement says payment equals 20 plus 20 plus 20, I contend that's 60. The IRS might contend it's 58. That does not make that contract any less definite or that sum certain. We might disagree. But you could have gotten zero. I mean, when you started the claims process, that was possible. Your Honor, we respectfully disagree. We submitted the lost profits paperwork we needed for the application of the formula. That's the settlement agreement and the approvals that it went through through the appeals court before it became finalized in 2014 was very specific. This framework is supposed to be transparent. It's supposed to be objective. Some people got denied. You agree? Your Honor, I don't have any firsthand knowledge of that. The contract says there are going to be denials, and here's the appeals process for denials. Common sense leads me to answer that question. And also, we have the DHCC notice that set forth a response deadline of October 15 of 2018 and stated if we do not receive the documents identified in Section 4 below on or before October 15, 2018, we will close the claim without payment. So you would concede if your client had not submitted the appropriate documentation, it would have received zero under that scenario. Your Honor, I don't — we don't concede that. What that would have been is, for instance, if we had not submitted some paperwork, it just would have been a breach of contract. We would have had to have gone and fought that out wherever that arena would have been perfect, maybe before the bankruptcy court. What about the — sorry. What about the causation requirements? Your Honor, may I answer your last question about the claims denial process? I do want to point out that there are various different claims in this BP process. Our claimant, we did not have to show proof. We did not have to show duty, breach, causation, liability, anything. I don't — can I — I need to push back a little bit on the causation here. Your client was in the economic loss claims for business economic loss claimants. That's who your client was. And if you look at Sections 5322 and 5324, it states that generally, unless causation is presumed, the claimant must establish that their loss was due to or resulting from the Deepwater Horizon incident. And then if you look at the exhibits, it refers to Exhibit 4B. If you look at Exhibit 4B, it then has the kinds of evidence you have to submit. You have to show a dip in profitability. You have to show that there were cancellations. In other words, there has to be some link to the Deepwater Horizon process. Does there not? Well, Your Honor, it's not causation in the — in the strictest sense here. So our class, our — our claimant actually did not have to show causation. But what it did have to show is proof of lost — or proof of previous property. It had to show that its losses were triggered by the event. Your Honor, respectfully, our class did not. Our claimant did not. You can even see — look at the claim form, too. There's no causation element on that. It's simply, hey, give us — give us your financial records for us to apply this formula. And not all claimants were like that. Some people actually did have to go and show causation. But not our particular — not the debtor. Your Honor, we jumped into — You have exceeded your time now, but you do have four minutes for rebuttal. Yes, Your Honor. Thank you. We would like to rest on the briefs at this time until it's time for rebuttal. Thank you. Sheehan, you may proceed. Thank you, and may it please the Court. I'm Anthony Sheehan. I represent the United States. As Judge Luck pointed out, there are broad areas of agreement here. We all agree that the BP claim existed starting in 2010. The paperwork was submitted in 2012. We all agree that the federal tax liens were able to attach to it as a commercial tort claim. And we all agree that Sons' lien did not attach to it as a commercial tort claim. So the question is, again, at what point did this BP claim become something other than a commercial tort claim? I have a question. Does it matter that that initial payment that payroll received was classified as an interim payment? It was an interim payment, but it doesn't matter because Sons had submitted additional documentation. And as I think both of the judges below pointed out, that money was paid out and it was off the table at that point. And Sons was pursuing additional money with additional forms and documentation to get an additional second award. So, no, that original amount of money was off the table at that time. Also, we have, you know, the Florida comment, reduced to a contractual obligation to pay. And in this case, we're also dealing with federal tax law. So there's a federal standard that a State lien is inchoate so long as the fact and amount of the lien are contingent on the outcome of a damages claim. And that is precisely what we have here. Let's explore a hypothetical. If the settlement instead was you submit your paperwork, as long as you have your name and signature on there, we are going to pay you $10,000. And if you must do it by, I think, the date that Judge Branch mentioned, October of 2018, in order to get your money. Would that be a contract for payment or an obligation for payment? Yes, Your Honor. It's just like the example you pointed out, where you buy the product and you get the postcard in the mail that says, there's been a settlement, and unless you opt out by that date, you're going to get the coupon or the $5 in the mail, as you said. If the contract was you submit the paperwork, and upon the mere signature and submission of, or just not opting out, yes, indeed, this money is guaranteed once you've submitted or once the opt-out date occurs, as in a consumer class action. So the IRS could get my $5 from DoorDash because it's not contingent, but it can't if it is contingent on what? Well, in that case, your $5 from DoorDash is not contingent anymore, but here it is a contingent process. If you look at the text of the BP Settlement Agreement, it is clear that not all claims will be granted. You could come away with zero. If you look at the text of the determination letter. Is it fair, though, that they say, and I think the evidence supports this, that they submitted everything they needed to submit? In other words, as I recall, there may have been a request in 2012 for some more documents, but by 2012, they had submitted everything. As it turns out, they were awarded what they were asked for, but that goes to the strength of their claim. And again, here we're dealing with lien priority law. And lien priority law is an area of law where you do want assurance, you do want certainty to the greatest extent possible. Let's try another hypothetical. Let's say there's an automobile accident. Somebody runs a red light and it's caught on several cameras. There's no question this driver ran the red light and caused the accident. That is a tort claim. That is a classic tort claim. And it's clear that at some point, because this driver ran the red light, there's going to be a settlement or there's going to be a judgment. But you can't jump the gun. That goes to the strength of the claim. You can't jump the gun and say, well, because it's clear that there's going to be a settlement of this auto accident, it's become a contract already, even before the settlement's done, or it's become a judgment already before a court is ruled. Payroll, as it turns out, had a very strong claim, but that does not change the nature of its claim as a tort claim. It remained a tort claim until there was a contractual obligation to pay. Show me the best provisions in the settlement agreement which showed that this was contingent rather than the five bucks I'm entitled to from DoorDash. Okay, we have that. We have set a lot of those provisions out in our brief. If I can find... Give me a moment to... Give me a moment to find that. Because that seems to be the dispositive question, in my mind. Yes, it is the dispositive question, when it became a contractual obligation to pay. What contingencies there were that made it not a contractual obligation, but instead something that you had to jump through some hoops in order to get whatever you needed to get? It starts at page 30 of our brief. It says, the BP settlement, a process to evaluate pending claims and pay them where appropriate. They must have been forms by a deadline. It must independently satisfy relevant requirements set forth in the settlement. But if the evaluation and the relevant requirements are simply you have to spell your name right and you need to sign in box number 11 rather than box number 12, that really doesn't seem to be the kind of contingency that would stop this from ripening into a contract, would it? I think you have to look at this as, not again, not at the strength of a claim, but it had to be more than submitting. You had to submit good paperwork. There was a framework. There were causation requirements. So your opposing counsel says not for her client. Is that right or is that not right? That's her argument. We would disagree. We'd say the payroll had to submit its claim into this process. And even the determination letter that payroll received, that's exhibit tab 74-7, the determination letter says that there is a possibility that you could, it could be the same as your previous eligibility notice, which answers partly your question, Judge Berger, that the amount in this new eligibility notice might be the same as the other one because the documentation provided or the reasons for the adjustment you asserted did not result in a change in your compensation award. There is appeal provisions. There's an appeal deadline stated at the top. It says on page 2 of 12 under section 4 that British Petroleum could appeal any awards over $25,000. So at this point, even the award letter shows the contingency here. Then payroll itself, when it's submitted to the bankruptcy court to get this approved in 2018, let me see if I can find that text. I can't find it right now, Your Honor, but it is in our brief that payroll discussed things like it was hard fought, we had to negotiate, submit a lot of documentation to get this. Yes, Your Honor. Counsel, so a separate argument is made by you regarding what you call the anti-assignment provision within the settlement agreement. If I can ask you a couple questions about that. How do you get to enforce that to your benefit? In other words, the purpose of that provision is to the benefit of BP and maybe the third party who is potentially assigning, but that's really none of your business, is it, that to assert that claim, assert that particular provision to prevent them from assigning their claim to Sons, their debtor or their creditor? Of course, it's right to be clear that this is a separate independent alternative argument that is a different route to affirmance. It's not our main argument. I understand. Yes. And we would say that here the IRS is an involuntary creditor, and the case in which the case that Sons cites dealt with a circumstance where the payor of the student funds had already effectively agreed to the transfer of the claim, I would say, I mean, this really was not explored in any depth below, that the IRS — Isn't that all the more reason we should not decide on that ground? Well, as we've said, the Court need not decide on this ground. It can pursue our main argument and argument number one. All right. So let's say on argument number one, I don't necessarily agree with you, and that because it hasn't been developed below and there's all sorts of preservation issues on argument number two, that might not be the best way to solve this. So then we get to argument three, which is that does this fall, does money fall within either the existing contract language in the lien or in the security agreement or the language regarding intangible property? That is correct, yes. If we have to get to argument number three again and totally independent alternative argument, we think the district court — I meant district court. The district court didn't touch this one. The bankruptcy court did and analyzed this correctly. If you look at the language of the security agreement, first of all, Florida law does provide the way to attach a commercial tort claim. And the comment, it doesn't even have to be that specific. If it had simply said, payrolls claims arising out of the Deepwater Horizon disaster, that would have been enough. I'm past argument number one. In other words, I find that before March of 2017, it ripened into, I'll call it, something else. And that something else is either an existing contract or intangible property. It would seem to me that existing contract, on its face, means any contract that not only that is owned or an asset of the company, but then in paragraph two of the collateral section says any proceeds from any of those things. So proceeds from an existing contract would seem to me to be payments due under a contract. Would it not? Oh, yeah. I mean, if it is concluded that by — if it is concluded that by that point, the BP claim had become contractual, yes, under paragraph two, it would transfer into proceeds. Okay. But we also have to look at reading this as a whole, reading it in the context of what payrolls business was, talking about existing contracts and policies. I'm a little skeptical of what the bankruptcy court did here by reaching outside the contract to somehow then use a canon of construction to interpret the provision of the contract. But even taking the canons themselves to just the four corners, I don't know how you modify the language existing contract, especially where the Florida UCC seems to allow categorization as a method to attach. So all you have to put is the category and then that whole category wholesale is attachable. Is it not? We would, again, have to still defend the bankruptcy court what it did. I understand, Your Honor, that you're skeptical of it and the decision ultimately rests with you. But we would say that under these circumstances, it looked to us more like fitting in with payrolls business and the surrounding text. It dealt with employee leasing and management. Well, let me ask you this, if you lack the skepticism that I do with regard to what the bankruptcy court did here. So let's say we were interpreting a statute and interpreting that statute, we use the canon of the things around it help define the thing that's there. And in the course of doing that, our lower court decided to then look at legislative history to then determine what were the things around there that Congress was thinking about in doing it. Would that be a sufficient basis? Would that be allowed under any of our, the Supreme Court's, our interpretive case law about how to interpret statutes? I see your point, Your Honor. Yes. In fact, legislative history, if the statute's clear, you don't look at legislative history. It seems to me that's kind of what the bankruptcy court did here, which is it took a document separate and apart from the contract to see what happened here or what this business was and then use that to then interpret what this particular provision is. And I just, again, I'm a little skeptical of that. But on its face, I can understand that there seem to be a lot of things related to insurance contracts and proceeds. But the term existing contract seems to be very broad and would encompass any contract that would add without a limitation on what kind of contract that is. Again, the district court did not follow that path. We put it as our third argument. We would still defend it, but we're looking still to our primary argument. And that, we think, is the easiest path to affirmance in this case. So if there are no further questions, we will rest on our brief and thank the Court for its time. Thank you. Thank you. Ms. Leach, you have four minutes. Thank you, Your Honors. My colleague at the bar made reference to a process, and so did the lower courts. Your Honors, by describing that, that is a mischaracterization. I draft contracts. I put arbitration provisions in there. So if that contract is disputed, I've got to go to arbitration to go fight that out. That does not make the contract any less enforceable or definite. And by analogy, that's essentially what boiled down as being argued here. Judge Luck, I can't go back to the future. I don't have an alternate reality. Let's take that hypothetical because it's a good one. But if we were talking about whether that contract was a contract that obligated payment or just a contract that had a process,  be one that had a process to resolve a dispute rather than one that obligated payment. Your Honor, no, take my earlier example. Payment, respectfully, Your Honor, no. I know, but the arbitration, I think your analogy is a good one because arbitration is then we're going to go and see whether I'm right or they're right and I have to pay them. That's essentially what happened here. You had an agreement to go through a process where we're going to decide if I am entitled to payment rather than have a contract that said you're entitled to $100 no matter what, right? Your Honor, I respectfully disagree. Under that logic, any contract, any lien on a contract could be stripped by simply disputing the contract. That's all it would take. And that, Your Honor, exactly what the lower courts essentially are putting forth would wreak havoc on contracts. The UCC describes collateral very broadly. If the court were to find otherwise that, for instance, the settlement agreement is not a contract or that the UCC description, the collateral description is inadequate, it would upset contract interpretations and or rather expectations for an infinite amount of contracts and secure transactions in Florida and potentially beyond. Well, I think if we were to decide anything, it would simply be whether this settlement agreement ripened into an obligation to pay or not. I don't know that we would wreck any sort of wrecking ball to the Florida UCC. But let's go back. So your opposing counsel mentioned a number of different provisions which show that payment here was contingent rather than an obligation. Why is he wrong on that? Why is he wrong that there was a contingency on whether you would be paid rather than a definite right to payment? Your Honor, I did not hear any provisions which contradicted that my client, or excuse me, that the debtor was entitled to payment. I didn't hear that. He said it required the submission of a form. He said it required evaluation by the claims administrator. He said it required follow-up releases to be signed. There were a few others that he meant it required. There was an appeals process if BP was unhappy. Those are the ones that I think that I heard while he was up here. And Your Honor, with respect to those, with respect to those, everything that needed to happen had already happened. The claim form had been submitted. The framework was already there. It's objective. Anyone can apply it. And all of our financial documents were already given. Everything else is just means for implementations of a settlement. But what if, I'm sorry, what if, what if payroll didn't think that they got the amount that they were entitled to back in when they initially submitted their paperwork? I mean, they haven't signed a release saying they wouldn't sue. Wouldn't they still have a claim against BP for the sums that they believe they are entitled to that they weren't paid initially? Judge Berger, that claim would be breach of a settlement agreement, not commercial tort. And to go back to my early analogy, if I have the contract that says payment equals 20 plus 20 plus 20, I contend it's 60. The IRS contends it's 58. We look to a provision in the contract that says if there's any dispute, prevailing party gets fees, and you've got to go to arbitration. That does not make that contract any less definite and some certain. But a settlement agreement is an agreement to pay if you do certain things. But this is just sort of, there's been no agreement to pay a certain amount of funds. You have them submitting what they believe they're owed, and then the other party submitting either, submitting what they think they owe or what's requested. But if they didn't send, if the BP did not pay payroll at that initial stage, what the payroll believed they were entitled to, how do you have any meetings of the mind? And why wouldn't payroll then be able to go after BP at that time for any additional funds, which they asked for later on, got after they signed the release? Your Honor, I am out of time, I see. But may I answer your question? Please. Okay. Thank you, Judge Brandt. Judge Berger, it harkens really back to that, is some people can have a dispute on what that some certains is. It does not make that some certain any less certain. That is the whole purpose of the formula. It would, under that reasoning, it would render the settlement agreement, the BP settlement agreement, essentially meaningless. Why go through all of that? Why go through and set all of that if it can't be honored? So, Your Honor, I respectfully disagree that. If even whoever disagrees about it, whether it sums or whether it's the IRS, there is no material difference. Your Honor, with that, respectfully. Let me ask you one follow-up question. So, you've talked about not only the signing of the settlement agreement, but also the fact that payroll had submitted the form, had given all the paperwork and all of that. What is the date that you are asking us to hold that this changed from a commercial tort to either an existing contract or an intangible payment? Are you asking us to look to the date the settlement agreement was signed or the date at which payroll had completed its obligations? Your Honor, I would phrase that until you can look at what happened before March 2017. And at that time, all of those things were performed. All of those events had happened. You can even look at when Sons entered in the security agreement in 2015 with the debtor. All of those events had occurred by then. Your Honors, with that, we respectfully request that the lower courts be reversed. Judge Luck, Judge Brant, Judge Berger, thank you very much for your time today. Thank you both. We have your case under advisement. Thank you. Thank you. Our second...